# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-680

| | | |
|---|---|---|
| | | Opinion Delivered: February 1, 2017 |
| MONA LISA PARDEW | | |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63PR-16-73] |
| V. | | |
| | | HONORABLE ROBERT HERZFELD, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | | |
| | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Mona Lisa Pardew appeals from an order awarding long-term protective custody of Ms. Pardew to appellee Arkansas Department of Human Services (DHS) pursuant to the Adult Maltreatment Custody Act.[1]  On appeal, Ms. Pardew argues that the trial court erred in ordering long-term custody with DHS because it was not established that she was an endangered adult requiring such placement.  We affirm.

Our standard of review for probate orders is well established.  We review probate proceedings de novo, and the decision of the trial court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial court to determine the credibility of witnesses.  *Adams v. Ark. Dep't of Human Servs.*, 375 Ark. 402, 291 S.W.3d 172 (2009).  A finding is clearly erroneous when, although there is evidence to

---

[1]The Adult Maltreatment Custody Act is codified at Arkansas Code Annotated sections 9-20-101 et seq. (Repl. 2015).

support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Middlebrook v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 161.

DHS initiated these proceedings on February 16, 2016, when it filed a petition for emergency custody of Ms. Pardew. In the petition, DHS alleged that Ms. Pardew's health or safety was in imminent danger and that she lacked the capacity to comprehend the nature and consequences of remaining in the dangerous situation. Attached to the petition was the affidavit of Darlene Schulz, an investigator with the Adult Protective Services Division of the Arkansas Department of Human Services. Ms. Schulz stated that DHS had received numerous calls regarding Ms. Pardew, who weighed approximately 600 pounds and had repeatedly fallen and called the police for assistance. Upon investigating, Ms. Schulz met with Ms. Pardew and discovered that she was unable to walk without falling. Ms. Pardew was unable to shop for groceries, prepare her own food, or perform basic personal care. Ms. Pardew was living alone at a motel, with no place to go upon checkout, and had nobody to provide the level of care she required. Ms. Pardew had urine-stained sheets and was found by Ms. Schulz to be sitting in a chair half-dressed, unable to get out of her chair and dress herself. Motel employees had recently called the fire department for help after Ms. Pardew had reported being stuck in the bathtub. Based on these circumstances Ms. Schulz determined that Ms. Pardew was physically impaired and incapable of caring for herself, and DHS placed a 72-hour emergency hold on Ms. Pardew.

Ms. Shultz's affidavit stated that, after being taken into DHS custody, Ms. Pardew was transported to a hospital where it was discovered that she had critically low levels of

hemoglobin and hematocrit, which was indicative of possible internal bleeding. Ms. Pardew was also diagnosed with a delusional disorder.

Dr. Kenneth Vest, a psychiatrist, examined Ms. Pardew and submitted an affidavit. Dr. Vest gave a primary diagnosis of "dementia and delusion" and reported that Ms. Pardew needed total care, including help with her daily activities and assistance with turning her in the bed. Dr. Vest gave the opinion that Ms. Pardew was physically and mentally impaired, that she lacked the mental capacity to protect herself from neglect, and that she should remain in DHS custody for protective care in a nursing home.

Based on DHS's petition, the trial court entered an ex parte order of emergency custody, as well as a probable-cause order setting the matter for a hearing on the issue of long-term custody. The hearing was held on April 12, 2016.

Ms. Schulz testified at the long-term custody hearing. Ms. Schulz testified that she did not believe Ms. Pardew could protect herself from abuse, neglect, or exploitation. Ms. Schulz stated that, although Ms. Pardew was now walking and was more independent in her care, she continued to suffer from dementia compounded by delirium. Ms. Schulz did not believe that Ms. Pardew had the capacity to comprehend the nature and consequences of remaining in the situation that presented an imminent danger to her health and safety. Ms. Schulz stated that Ms. Pardew did not care for herself appropriately and was likely to return to her previous condition if not monitored in an assisted-living situation. Ms. Schulz could not identify any DHS services that would be a viable alternative to protective custody.

Ms. Pardew testified on her own behalf, and she indicated that she disliked living in the nursing home where she had been placed. Ms. Pardew testified that she had been taking care of herself, feeding herself, and bathing herself for more than a month. She stated that she wanted to move either into an apartment or into a mobile home on some property she owned.

On April 12, 2016, the trial court entered an order placing Ms. Pardew in the long-term protective custody of DHS. In its order, the trial court found that Ms. Pardew was endangered or impaired, that she lacked the capacity to comprehend the nature and consequences of remaining in a situation presenting an imminent danger to her health or safety, and that she had a mental or physical impairment that prevented her from protecting herself. The trial court specifically found that Ms. Pardew was unable to provide for her own protection from maltreatment. The trial court also found by clear and convincing evidence that Ms. Pardew was in need of DHS placement. The trial court ordered DHS to review the case every six months, or more frequently if warranted, as required by Arkansas Code Annotated section 9-20-118(a). The trial court stated that, pursuant to Arkansas Code Annotated section 9-20-118(b), the case would be judicially reviewed at least once every twelve months.

In this appeal, Ms. Pardew challenges the sufficiency of the evidence to support the trial court's long-term protective-custody order. Pursuant to Arkansas Code Annotated section 9-20-117(c), the trial court may order long-term custody with DHS if the court determines that (1) the adult has a mental or physical impairment or lacks the capacity to comprehend the nature and consequences of remaining in a situation that presents an

imminent danger to his or her health or safety; (2) the adult is unable to provide for his or her own protection from maltreatment; and (3) the court finds clear and convincing evidence that the adult to be placed is in need of placement as provided in this chapter. "Adult Maltreatment" means abuse, exploitation, neglect, physical abuse, or sexual abuse of an adult. Ark. Code Ann. § 9-20-103(2). "Neglect" includes an act or omission by an endangered or impaired adult, such as self-neglect. Ark. Code Ann. § 9-20-103(17). "Endangered adult" is defined as an adult who is found to be in a situation or condition that poses a danger to himself or herself, and who demonstrates a lack of capacity to comprehend the nature and consequences of remaining in that situation or condition. Ark. Code Ann. § 9-20-103(6)(A). An "impaired adult" is an adult who, as a result of mental or physical impairment, is unable to protect himself or herself from abuse, sexual abuse, neglect, or exploitation. Ark. Code Ann. § 9-20-103(10)(A).

Ms. Pardew's specific argument on appeal is that the trial court erred in finding that she was an endangered or impaired adult requiring long-term protective custody. She contends that because these findings were erroneous there was insufficient evidence of neglect. Ms. Pardew concedes that, at the time she was taken into DHS custody, she was likely in need of protective services. However, she asserts that she has made measurable progress and that, by the time of the long-term custody hearing, she demonstrated the ability to care for and protect herself. Ms. Pardew indicated in her testimony that she is able to walk, bathe herself, and feed herself. Ms. Pardew notes that, in Ms. Schulz's testimony, even Ms. Schulz acknowledged that Ms. Pardew was walking and was more independent in her care. Although Ms. Pardew had problems, she argues that they were not to the extent

to constitute neglect. Therefore, she contends that this case should be reversed and remanded with instructions to remove her from DHS's protective custody.

We find no clear error in the trial court's determination that Ms. Pardew is an endangered and impaired adult who is presently unable to protect herself from neglect. Although Ms. Schulz did indicate that Ms. Pardew was walking and had made improvements in caring for herself, the trial court noted at the hearing that these improvements did not occur until she was in DHS custody and receiving assistance. Despite these improvements, Ms. Schulz stated that due to Ms. Pardew's dementia and delirium she was unable to properly care for herself and remained unable to protect herself from neglect.

There were also medical records to support the trial court's decision. In particular, Dr. Vest reported, just two weeks before the hearing, that Ms. Pardew suffered from dementia with delusional features and behavioral disturbances. Dr. Vest stated that Ms. Pardew was mentally impaired and required long-term nursing-home care due to poor self-care skills and poor insight. Dr. Ferdinand Roda also examined Ms. Pardew, and he reported that she was morbidly obese, was both physically and mentally impaired, and lacked the capacity to protect herself from abuse, neglect, or exploitation. For these reasons, Dr. Roda indicated that Ms. Pardew required assisted living and should remain in the protective custody of DHS.

On this record, we are not left with a definite and firm conviction that the trial court made a mistake in awarding long-term custody of Ms. Pardew to DHS. Accordingly, we affirm the trial court's order.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*J. Brent Standridge*, Saline Cty. Deputy Pub. Def., for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.